IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| General Star Indemnity Company, | ) | Civil Action No. 2:22-3811-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Condustrial, Inc., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Before the Court is Defendant Condustrial, Inc. ("Condustrial" or "Insured")'s motion to dismiss. (Dkt. No. 20). For the reasons set forth below, Defendant's motion is denied.

## Background

Plaintiff General Star Indemnity Company ("Insurer") brings this declaratory judgment action regarding the rights and obligations under a policy of insurance issued by Insurer to Insured in connection with an underlying action filed by Defendant Tawanna Gamble, as Personal Representative of the Estate of Richard Lee Lance.

In *Gamble v. Southern Health Partners, Inc., et al.*, 2022-CP-0155 (Dkt. No. 15-2) (amended complaint filed in South Carolina state court on November 15, 2022) (the "Underlying Action"), Gamble alleges that Richard Lee Lance ("Decedent") was "arrested and transported to the Georgetown County Detention Center" on September 8, 2022. (*Id.* ¶ 12). Gamble alleges Insured provided "healthcare services within county correctional facilities." *See* (*id.* ¶¶ 4, 5) (alleging LPN Falkenhagen was an employee/independent contractor of Insured and "was responsible for providing nursing care to" Decedent); (*Id.* at 20-23) (affidavit of Medical Malpractice Case expert Dr. Edward O'Bryan III, M.D., stating that after reviewing "the records submitted to me . . . the medical staff working within Georgetown County Detention Center . . .

-1-

committed" various acts of negligence). Gamble alleges Decedent began experiencing symptoms of opioid withdrawal, was not properly treated, and subsequently died. (Dkt. No. 15-2 at 4-9). Against Insured, Gamble brings claims for (1) Negligence/Medical Malpractice/Survival and (2) Negligence/Medical Malpractice/Wrongful Death. Gamble seeks punitive damages. (*Id.* at 9-13, 16).

On November 1, 2022, Insurer commenced this action (the "Federal Action"). Per its amended complaint, Insurer seeks declarations that under the policy it issued to Insured—Policy No. IJG932123 (the "Policy")—it has: (1) no duty to defend or indemnify per the Locations Endorsement; (2) no duty to defend or indemnify per the Designated Professional Services Limitation Endorsement; and (3) no duty to indemnify Insured for any punitive damages per the Punitive Damages Exclusion. (Dkt. No. 15).

On December 21, 2022, Insured moved to dismiss this action. (Dkt. No. 20). On January 3, 2023, Insurer filed a response in opposition. (Dkt. No. 22).

Insured's motion is fully briefed and ripe for disposition.

## Legal Standard

Federal courts are courts of limited jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Standing and ripeness are jurisdictional issues that courts must consider on their own initiative. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230-31 (1990); *National Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). Standing requires a plaintiff to allege a concrete injury that is "actual or imminent, not 'conjectural' or 'hypothetical[.]'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1990) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Ripeness determines when a case or controversy is fit for federal judicial review. *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967).

Even when standing and subject matter jurisdiction exist, a court has discretion to decide whether to exercise jurisdiction in declaratory judgment actions.

> Under the Declaratory Judgment Act, a district court, in "a case of actual controversy within its jurisdiction ... *may declare* the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). This Act gives federal courts discretion to decide whether to declare the rights of litigants ... Rather than grant litigants a right to judgment in their case, it merely permits the courts to hear those cases.

*Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 201 (4th Cir. 2019) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995)). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288. When an ongoing proceeding in state court overlaps with a federal declaratory judgment action, courts must particularly consider whether "federalism, efficiency, and comity" counsel against exercising jurisdiction. *Trustgard*, 942 F.3d at 202. In making this determination, courts look to (1) the state's interest in having its own courts decide the issue; (2) the state courts' ability to resolve the issues more efficiently than the federal courts; (3) the potential for unnecessary entanglement between the state and federal courts based on overlapping issues of fact or law; and (4) whether the federal action is mere forum-shopping. *Id.* (citing *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994), *abrogated in part on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)) (the "*Nautilus* factors").

## Analysis

Relevant here, the Policy defines a "medical incident," in pertinent part, as "any act, error or omission, or a series of related acts, errors or omissions, in the providing of or failure to provide **professional services** . . . ." (Dkt. No. 15-1 at 15). The Policy defines "professional services" to

mean "services performed in the treatment or care of any person, including medical . . . other professional healthcare services, including . . . furnishing of food, beverages, medications, or equipment or appliances in connection with such treatment or care . . . ." (*Id.* at 16). The Policy contains several endorsements which modify coverage including a Limitation of Coverage to Specified Locations Endorsement (the "Locations Endorsement"). (*Id.* at 29-31) (stating "Coverage as is afforded by the terms and conditions of this policy shall apply only with respect to the **Named Insured's** owners of, or **Professional Services** conducted at, the following locations" and providing a chart listing 21 facilities). Similarly, the Policy also contains a Designated Professional Services Limitation Endorsement, which limits coverage of medical incidents to "Nurse (RN and LPN) Staffing at scheduled correctional facilities." (*Id.* at 28). The amended complaint in the Federal Action alleges Georgetown County Detention Center is not listed on the Location Endorsement. With the above in mind, the Court turns to Insured's motion to dismiss.

Insured moves to dismiss the Federal Action on two bases. First, Insured argues this court lacks Article III jurisdiction to hear this case while the Underlying Action is pending. (Dkt. No. 20 at 1-2). Second, Insured argues the Court should exercise its discretion and decline to hear this action per *Nautilus*.

As to Article III jurisdiction, Insured argues that *Trustgard* requires dismissal of this lawsuit because "suits about the duty to *indemnify* [are] ordinarily advisory when the insured's liability remains undetermined." (Dkt. No. 20 at 1) (emphasis added) (citing *Trustgard*, 942 F.3d at 200). Insured argues that because each of Insurer's cause of action seeks a declaration regarding the duty to indemnify, and because the Underlying Action is ongoing, this Court lacks "subject

-4-

matter jurisdiction." (*Id.* at 2). Insured does not dispute, however, that Insurer explicitly seeks an initial declaration as to its duty to defend. *See* (*id.*).

In *Trustgard*, an insurer sought a declaratory judgment delineating its duty to indemnify. 942 F.3d at 197. The Fourth Circuit vacated the district court's declaratory judgment, finding that the district court abused its discretion when it assumed jurisdiction under the Declaratory Judgment Act. *Id.* It concluded, applying the *Nautilus* factors, that considerations of comity and judicial efficiency weighed strongly in favor of permitting the state court to address the relationship among the various parties. *Id.* at 204. The Fourth Circuit emphasized that the declaratory judgment precluded a state court from considering certain issues, required a federal court to extensively analyze state law, and resulted in duplicative discovery. *Id.* at 202-04.

The Fourth Circuit also questioned the existence of Article III jurisdiction. First, it doubted that the insurer plaintiff had standing. *Id.* at 200. The Fourth Circuit characterized the insurer's alleged injury as potentially "guarantee[ing] a future judgment" against the insured and described it as "hypothetical and contingent" because the injury may or may not occur depending on the outcome of the state lawsuit. *Id.* Second, it considered the suit unripe for adjudication. *Id.* Since the state court had not determined the insured defendant's liability, a federal suit adjudicating the insurer plaintiff's duty to indemnify would be advisory. *Id.* As a result, the Fourth Circuit advised that "courts should exercise their discretionary jurisdiction with caution when doing so would raise serious questions about Article III jurisdiction[.]" *Id.* at 202.

The Court finds *Trustgard* inapposite and denies Insured's motion on this point. *Trustgard* did not address a court's ability to adjudicate an insurer's duty to defend and explicitly concerned the duty to indemnify where underlying factual questions remained unresolved. *Id.* at 200 (noting "we distinguished duty-to-defend cases that addressed who was required to pay the costs of

defending a suit prior to judgment. Thus, suits about the duty to indemnify—unlike the duty-to-defend suits—would ordinarily be advisory when the insured's liability remains undetermined. And here, we do not face any claim about Trustgard's duty to defend . . . .") (internal citations omitted). Nothing in *Trustgard* precludes this Court from determining whether Insurer has a duty to defend the Underlying Action or calls into question its subject matter jurisdiction. In fact, *Trustgard* itself says the opposite. *Id.* (noting a declaratory judgment action addressing an insurer's duty to defend may proceed before underlying liability has been established because "[t]hat question is sufficiently distinct from the issues that have arisen thus far in the state proceedings") (citing *Med. Assurance Co. v. Hellman*, 610 F.3d 371, 381–82 (7th Cir. 2010)).

Accordingly, the Court rejects Insurer's argument that *Trustgard* requires dismissal of the Federal Action and addresses whether *Nautilus* requires the Court decline to hear this case.

As to the first factor—whether the state has a strong interest in having the issues decided in its courts—the Court finds the factor weighs in Insurer's favor. The Fourth Circuit has "consistently followed the rule that the state's interest, while important, is diminished if the state-law issues are not novel, unsettled, difficult, complex, or otherwise problematic." *Power Concepts, LLC v. PowerSecure, Inc.*, No. 8:14-cv-00351-GRA, 2014 U.S. Dist. LEXIS 124759, at *6 (D.S.C. Sept. 8, 2014) (citing *First Fin. Ins. Co. v. Crossroads Lounge*, 140 F. Supp.2d 685, 695 (S.D. W. Va. 2001)). Indeed, it has been recognized that where questions of state law "involve the routine application of settled principles of law to particular disputed facts[,]" the state's "interest in having those issues decided in its own courts . . . is . . . no stronger than it is in any case in which a federal court has jurisdiction over a claim in which state law provides the rule of decision . . . ." *Nautilus*, 15 F.3d at 378. In such instances, the state's interest, "which is . . . no stronger than it is in any case in which a federal court has jurisdiction over a claim in which state law provides the rule of

decision, is not sufficiently compelling to weigh against the exercise of federal jurisdiction." *Id.* (citation omitted).

Here, the question of whether the Location Endorsement or Designated Professional Services Limitation Endorsement are implicated by the allegations in the amended complaint in the Underlying Action are not novel or complex. *Auto-Owners Ins. Co. v. Smith*, No. 4:21-cv-03693-JD, 2022 U.S. Dist. LEXIS 9379, at *5 (D.S.C. Jan. 19, 2022) (agreeing to exercising jurisdiction where court found it "unlikely to break new ground or be faced with novel issues of state interest") (quoting *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998) (quotations omitted.)); *Stroble v. Allstate Ins. Co.*, No.: 2:22-cv-00747-RMG, 2022 U.S. Dist. LEXIS 94739, at *6 (D.S.C. May 25, 2022) (noting that a federal court can abstain from exercising jurisdiction when the questions of state law are difficult and unsettled but when a federal court is simply applying standard issues, the state does not have a strong interest.). Thus, this factor weighs in Insurer's favor.

As to factor two—whether the state courts could resolve the issues more efficiently than the federal court—the Court finds the factor also weighs in favor of Insurer. Insurer is not a party to the Underlying Action and the Policy is not at issue therein. As Insurer notes, all necessary parties are joined here. (Dkt. No. 22 at 11-12). Further, as Insured does not dispute, it would be inappropriate under South Carolina law for Insurer to intervene in the Underlying Action in state court. (*Id.* at 11); *Builders Mut. Ins. Co. v. Island Pointe, LLC*, 431 S.C. 93 (2020) (holding that insurers were not proper parties to liability actions against insureds and that coverage disputes should be addressed in separate coverage litigation); *Coffey*, 368 F.3d at 414 ("Because Penn–America is not a party in the state action and it is not clear under Virginia rules that Penn–America could intervene to have coverage issues decided within the scope of the underlying tort case,

dismissing the federal coverage case would not seem to advance any cause of efficiency."). Accordingly, this factor weighs in Insurer's favor.

As to factor three—whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts—the Court finds the factor weighs in Insurer's favor. The question of whether a duty to defend exists based on the allegations of the amended complaint in the Underlying Action would not require this Court to "resolve factual questions at all," *Coffey*, 368 F.3d at 413, contrary to Insurer's contentions, (Dkt. No. 20 at 5).[1] *Coffey*, 368 F.3d at 413 ("[T]he duty-to-defend question in this case will not require the district court to resolve factual questions at all. It need only decide such coverage by comparing what Sizemore *has alleged* in the state court action with the language of the Penn-American insurance policy."); *Dudek v. Commonwealth Land Title Ins. Co.*, 466 F. Supp. 3d 610, 616 (D.S.C. 2020) ("South Carolina courts determine whether a duty to defend exists based on the allegations in the underlying complaint.") (citing *USAA Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 661 S.E.2d 791, 796 (2008)); *Collins Holding Corp. v. Wausau Underwriters Ins. Co.*, 379 S.C. 573, 577, 666 S.E.2d 897, 899 (2008) ("If the facts alleged in the complaint fail to bring a claim within the policy's coverage, the insurer has no duty to defend."). Thus, this factor weighs in favor of Insurer.

Last, as to factor four—whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum shopping—the factor weighs in Insurer's favor. Insured does not argue this factor in its briefing and there is no information before the Court which

---

[1] Insured argues, for example, that the Court would have to make determinations about "when and where Condustrial 'supplied health care professionals.'" (Dkt. No. 20 at 5). This is not the case. To resolve the question of the duty to defend, the Court simply looks to the allegations in the underlying complaint and asks if the "underlying complaint creates a possibility of coverage," *City of Hartsville v. South Carolina Mun. Ins. & Risk Fin. Fund*, 382 S.C. 535, 543, 545 (2009) (further noting that "[a]n insurer's duty to defend may arise from facts outside of the complaint that are known to the insurer").

would lead it to find that Insurer "raced to the federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum." *Nautilus*, 15 F.3d at 380.

Accordingly, as all *Nautilus* factors weigh in favor of this Court hearing the Federal Action, the Court denies Insured's motion to dismiss.

## **Conclusion**

For the reasons stated above, the Court **DENIES** Condustrial's motion to dismiss (Dkt. No 20).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

January 25, 2023
Charleston, South Carolina

-9-